# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GOLDEN GATE NATIONAL SENIOR CARE, LLC, *et al.*, | : : : | 1:16-cv-1791 |
| Petitioners, | : : | |
| v. | : : | Hon. John E. Jones III |
| COLLEEN A. NEWKAM, administratrix for the estate of CHARLES J. NEWKAM, | : : : : | |
| Respondent. | : : | |

## **MEMORANDUM**

## **July 31, 2017**

The above-captioned case is a limited-purpose action under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* whereby Petitioners Golden Gate National Senior Care, LLC, *et al.*[1] seek to enforce a pre-dispute agreement to arbitrate claims asserted in a tort action filed by the Respondent, Colleen A. Newkam, that is presently pending in state court. Before the Court is Petitioners' Motion for Summary Judgment, filed on May 3, 2017. (Doc. 18). The Motion has been fully briefed (docs. 19, 20 and 22), and for the reasons discussed, shall be granted in full below.

---

[1] Petitioners are Golden Gate National Senior Care, LLC; GGNSC Harrisburg, LP, d/b/a Golden LivingCenter – Blue Ridge Mountain; GGNSC Harrisburg GP, LLC; GGNSC Equity Holdings, LLC; GGNSC Holdings, LLC; GPH Harrisburg, LP; GGNSC Clinical Services, LLC; and GGNSC Administrative Services, LLC (collectively, the "Petitioners").

1

I.      **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

On August 6, 2014, Mr. Charles Newkam suffered a stroke. (Doc. 19, ¶ 3). On August 8, 2014, Mr. Newkam and his daughter, Ms. Colleen Newkam ("Respondent") executed a General Durable Power of Attorney document, empowering Respondent to act for Mr. Newkam. (*Id.*, ¶¶ 5-6).

On August 13, 2014, Mr. Newkam was admitted to Golden LivingCenter – Blue Ridge Mountain. (Doc. 1, ¶¶ 12, 17). Within several days of Mr. Newkam's admission, the Respondent signed a number of admissions-related documents, including an agreement to arbitrate (the "Arbitration Agreement" or the "Agreement"). (*Id.*, ¶¶ 11, 18; doc. 20, ¶ 7). According to Petitioners, the facility admissions representative gave Respondent the Arbitration Agreement, removed the signature page for execution, and did not separately explain or review the contents of the Arbitration Agreement with her. (Doc. 19, ¶ 13).

According to Respondent, she was presented with "numerous documents that she was told were 'for billing and taking care of [Mr. Newkam's] insurance purposes.'" (Doc. 20, ¶ 8). In her statement of facts, Respondent avers that "rather than being given the Arbitration [A]greement in its entirety, Ms. Newkam was given only the last page of the Agreement and was told that she needed to sign next to the X." (*Id.*, ¶ 9). No one at the facility explained the contents of the Agreement, told her that she could take the documents home to read before

signing, or informed the Respondent that she could consult with an attorney. (*Id.*, ¶ 11). "Indeed, [Respondent] thought that signing the Agreement was necessary to have her father remain at the facility." (*Id.*, ¶ 10).

At the top of the first page of the document, in large bold-font capital letters, the Arbitration Agreement provides:

> **THIS AGREEMENT IS <u>NOT</u> A CONDITION OF ADMISSION TO OR CONTINUED RESIDENCE IN THE FACILITY.**

(*Id.*, ¶ 15; doc. 19-3). Also on the first page, under the bolded heading "**II. Voluntary Agreement to Participate in ADR**," the Agreement states "[t]he Parties agree that any disputes covered by this Agreement ("Covered Disputes")[2] that may arise between them shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration." (Doc. 19-3, p. 2). Also in large bold-font capital letters, the Arbitration Agreement in part states:

> **THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY, THE OPPORTUNITY TO PRESENT THEIR CLAIMS AS A CLASS ACTION AND/OR TO APPEAL ANY**

---

[2] Covered disputes are defined as "any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility . . . . Covered disputes include but are not limited to all claims in law or equity arising from . . . negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state or local medical, health care, consumer or safety standards." (Doc. 19-3, p. 3).

3

**DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN.**

(Doc. 1-3, p. 2; doc. 19-3, p. 2).

Further, the Agreement provides that Respondent "may revoke this Agreement by sending written notice to the Facility within thirty (30) days of signing it . . . ." (Doc. 19, ¶ 16 (citing to Doc. 19-3)). However, Respondent never opted to so do. (*Id.*).

On August 5, 2016, Respondent filed a Complaint with the Dauphin County Court of Common Pleas arising from dissatisfaction with Mr. Newkam's alleged care and treatment at Golden LivingCenter. (Doc. 1, ¶¶ 26, 28).[3] Believing these claims to be encompassed by the Arbitration Agreement, on August 26, 2016, Petitioners filed a Petition in this Court. (Doc. 1). As noted above, therein Petitioners request declaratory judgment that the Arbitration Agreement is enforceable, and seek an Order to compel arbitration and to enjoin the Respondent from further pursuing the state court action. (*See generally*, doc. 1).

On May 3, 2017, Petitioners filed the instant Motion for Summary Judgment. (Doc. 18). As noted, the Motion has been fully briefed and is thus ripe for our review. (Docs. 13, 14 and 15). For the reasons that follow, the Motion shall be granted.

---

[3] In compliance with the applicable filing deadline, Petitioners filed Preliminary Objections to Respondent's Complaint in the Court of Common Pleas. (Doc. 19, p. 11). As of May 3, 2017, the court had not yet adjudicated Petitioners' Preliminary Objections. (*Id.*).

## II. STANDARD OF REVIEW [4]

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial. *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In advancing their positions, the parties must support their

---

[4] Though here, Petitioners bring a Motion for Summary Judgment, "motions to compel arbitration are reviewed under the Federal Rules of Civil Procedure summary judgment standard" as well. *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 2009)).

5

factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

### III. ANALYSIS

Petitioners submit that this Court should grant summary judgment on the basis that no genuine issue of material fact exists in that Respondent agreed to arbitrate, never rescinded the Arbitration Agreement, and the Agreement is valid and enforceable and applicable to all but Respondent's wrongful death claim asserted in the state court action.

Respondent asserts a variety of arguments challenging Petitioners' stance. First, Respondent argues that the Arbitration Agreement is an unconscionable

contract of adhesion due to the circumstances surrounding the execution of the Agreement and the one-sided and unfair nature of its consequences. (Doc. 20, p. 14-15). Next, Respondent argues that because the Arbitration Agreement does not apply to Respondent's wrongful death claim, the Court would have to sever it from Respondent's other claims, thereby nullifying the purportedly conferred consideration and frustrating the intended purpose of the Agreement. (Doc. 20, pp. 20-21). Finally, Respondent also argues that because the Agreement is undated, it is missing an essential term and is therefore not a valid contract. We take each argument in turn below.

### A. Whether the Agreement is Unconscionable

"[T]he FAA places arbitration agreements on 'an equal footing with other contracts' and thus, like any other contract, a plaintiff may bring a challenge to court claiming that an agreement to arbitrate is unenforceable based on any of the 'generally applicable contract defenses, such as fraud, duress, or unconscionability . . . .'" *Quilloin*, 673 F.3d at 228-29 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 338 (2011)); *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S.Ct. 1421, 1426 (2017) ("The FAA makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" (quoting 9 U.S.C. § 2)).

"[I]n determining unconscionability, we must use principles of Pennsylvania law, to the extent that such law is not displaced by the FAA. To prove unconscionability under Pennsylvania law, a party must show that the contract was *both* substantively and procedurally unconscionable." *Quilloin*, 673 F.3d at 228-29 (citing *Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 925 A.2d 115, 119 (2007)) (emphasis added). When considering substantive and procedural unconscionability, "the Pennsylvania Supreme Court has indicated that it might be appropriate to use a 'sliding-scale approach' so that 'where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required' and presumably, vice-versa." *Harbison v. Louisiana-Pacific Corp.*, 602 Fed.Appx. 884, 886 (3d Cir. Feb. 18, 2015).

1. **Substantive Unconscionability**

"A contract or provision is substantively unconscionable where it 'unreasonably favors the party asserting it.'" *Quilloin*, 673 F.3d at 230. Stated differently, "substantive unconscionability . . . involves 'contractual terms that are . . . grossly favorable to one side and to which the disfavored party does not assent.'" *Harbison*, 602 Fed. Appx. at 887 (internal citations omitted). "An arbitration agreement cannot be construed as substantively unconscionable where it 'does not alter or limit the rights and remedies available to a party in the arbitral forum.'" *Quilloin*, 673 F.3d at 230 (quoting *Edwards v. HOVENSA, LLC*, 497

8

F.3d 355, 364 (3d Cir. 2007)). This reasoning is based on the premise that "'arbitration clauses substitute one procedurally fair forum for another.'" *Edwards v. HOVENSA, LLC*, 497 F.3d at 364 (quoting David S. Schwartz, *Enforcing Small Print to Protect Big Business: Employee and Consumer Rights Claims in an Age of Compelled Arbitration*, 1997 Wisc. L. Rev. 33, 110 (1997)).

Here, Respondent has failed to meaningfully assert that the Arbitration Agreement at issue alters or limits the rights and remedies available to her in the arbitral forum. Rather, Respondent contends that public policy concerns should persuade the Court to find substantive unconscionability. In support of her position, Respondent points to a ban on all pre-dispute arbitration clauses going forward, which was issued by the Centers for Medicare and Medicaid Services in 2016 and enjoined by the United States District Court for the Northern District of Mississippi. 42 CFR § 483.70 (n). The ban is not currently in effect.

The language of 42 CFR § 483.70 (n) does indeed suggest public policy concerns regarding pre-dispute arbitration agreements. (Doc. 20-4). However, agency action already enjoined as violative of the FAA is not sufficient to persuade us that public policy considerations to the degree necessary to find substantive unconscionability exist here, particularly given that "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements.'" *Ggnsc Camp Hill West Shore, LP v. Thompson*, Civil Action No. 1:15-cv-445, 2016 WL 3418490, at *3 (M.D.Pa.

9

June 22, 2016) (Conner, C.J.) (declining to find an arbitration agreement between a nursing home and patient unconscionable). Accordingly, Respondent's public policy argument is not persuasive.

Respondent also argues that the discovery limitations placed on both parties by JAMS rules governing arbitration procedures are unduly restrictive and unfairly favor petitioners. (Doc. 20, ¶ 18). However, numerous courts in this district have already found that "[t]he application of JAMS rules in the arbitral forum does not result in the substantive unconscionability" of arbitration agreements. *Id*. at *6 (considering the existence of a $250 fee for the initiation of arbitration imposed by JAMS). Because the JAMS regulations are not "clearly unreasonable and unduly favorable" to Petitioners, even viewed in the light most favorable to Respondent, there is no genuine dispute of material fact regarding her claim of substantive unconscionability. *See Quilloin*, 673 F.3d at 234-35 (citing *Nino v. Jewelry Exchange*, 609 F.3d 191, 202 (3d Cir. 2010)).

### 2. Procedural Unconscionability

Even if Respondent had raised a genuine dispute of material fact as to substantive unconscionability, we would nonetheless find in Petitioners' favor because Respondent has failed to raise a dispute regarding whether the Arbitration Agreement was procedurally unconscionable. "Procedural unconscionability exists 'where there was a lack of meaningful choice in the acceptance of the

challenged provision.'" *Id.* (quoting *Salley*, 925 A.2d at 119). "A court must consider the following factors: (1) the 'take it or leave it' nature of the standardized form of the document;' (2) the 'relative bargaining positions' of the parties; and (3) 'the degree of economic compulsion motivating' the signatory." *Thompson*, 2016 WL 3418490, at *4 (quoting *Quilloin*, 673 F.3d at 235-36).

At first blush, it appears from the parties' briefs that a genuine dispute of material fact exists regarding whether Respondent in fact received the Arbitration Agreement in its entirety, or merely the signature page. As noted above, Respondent indicates in her statement of facts that "rather than being given the Arbitration Agreement in its entirety, Ms. Newkam was *only* given the last page of the Agreement and was told that she needed to sign next to the X . . . ." (Doc. 20, ¶ 9) (emphasis added). In comparison, Petitioners aver that "[t]he facility admissions representative gave Ms. Newkam the Arbitration Agreement, had removed the signature page for execution, and did not separately explain or review the content of the Arbitration Agreement." (Doc. 19, ¶ 13).

A close look at Respondent's deposition testimony belies her representation that she was not given the Arbitration Agreement in its entirety.[5] Apparently, upon

---

5   Once again, the Court is forced to remind counsel for Respondent of their obligation to provide truthful representations to the Court under Fed. R. Civ. P. 11(b), which provides in relevant part that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented part certifies that to the best of the person's knowledge, information, and belief, formed after an

11

meeting with Petitioners' admissions representative in August 2016 to sign the paperwork corresponding with her father's admission, Respondent was given two separate collections of documents. The first was a set of signature pages, including the signature page of the facility's admission agreement. (Doc. 20-2, p. 59). The signature page of the Arbitration Agreement was included therein. (Doc. 20-2, p. 12). The second collection of documents, given just minutes later, was a folder containing the bodies of the agreements. (*Id.*, pp. 12-13).

In her brief, Respondent argues that because she was presented "only" with the signature page of the Arbitration Agreement and the contents of the Arbitration Agreement were not explained to her, the process by which she signed the Agreement was procedurally unconscionable. Had this in fact been the case, we might have been inclined to agree with Respondent. However, Respondent was in fact given the body of the Arbitration Agreement, and though she had already signed it by the time she in fact read the Agreement, she nonetheless reviewed the Agreement thoroughly and in its entirety, presumably thus also including the Agreement's thirty (30) day opt-out clause, which Respondent then failed to exercise. (Doc. 20-2, pp. 12-23 (explaining that Respondent read the agreements presented to her in their entirety later the same day, in the comfort of her home)).[6][7]

---

inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support."

[6] Respondent's deposition testimony reads as follows:

Courts have previously held that arbitration agreements that afford residents or their signatories the opportunity for revocation within thirty days "lack[ ] the 'take-it-or-leave-it' quality of a contract of adhesion." *Thompson*, 2016 WL 3418490, at * 5; *Golden Gate Nat'l Senior Care, LLC v. Sulpizio*, No. 1:15-cv-174, 2016 WL 1271333, at *6 (M.D.Pa. Mar. 31, 2016) (Kane, J.) (upholding a similar agreement to arbitrate); *Clouser v. Golden Gate Nat'l Senior Care, LLC*, No. 3:15-33, 2016 WL 1179214, at *7 (W.D.Pa. Mar 23, 2016). Rather, courts considering this document before have noted that the Arbitration Agreement "is a short, plainly-worded document emphasizing its key function, to wit: a bilateral, voluntary agreement to arbitrate claims." *Thompson*, 2016 WL 3418490, at * 5. Further, the terms of the agreement provide for a signature on behalf of the facility, which verifies that, prior to signing the agreement, the Respondent had the

---

| | | |
|---|---|---|
| Q: | | When was the first time you went back and actually read the contents of the booklet? . . . . |
| A: | | Probably later on that evening, later on—in the daytime after I got home and got settled in. |
| Q: | | So you took the booket that contains the admission and arbitration agreement home with you..that day, on the 13th, correct? . . . . |
| A: | | Yes. |
| Q: | | Did you have any kind of questions about what you had read? |
| A: | | No. |
| Q: | | Okay. Was there anything about what you had read that gave you any cause for concern? |
| A: | | No. |

(Doc. 20-2, p. 13).

[7] As noted in the Factual Background, Section I *supra*, the Agreement provides that a party signing it affirms her understanding that the execution of the agreement is not a condition of admission to the facility, and that she may revoke her signature within thirty (30) days.

opportunity to thoroughly read it. Thus, the circumstances surrounding the execution of the Agreement indicate at most a small level of procedural unconscionability. *Sulpizio*, 2016 WL 1271333, at *7 (citing *Quilloin*, 673 F.3d at 235, for the proposition that "[c]ontracts cannot be deemed unconscionable simply because of disparity in bargaining power . . . Our role is to distinguish acceptable bargaining situations from those which violate strong public policy."). Accordingly, we cannot find the Agreement procedurally unconscionable on these grounds.

Next, Respondent argues that her relative bargaining position was weak as compared to Petitioners', and the degree of compulsion motivating her to enter into the Arbitration Agreement was very strong. In support of these contentions, she notes that Petitioners' facility was the only facility with a bed available to her father. (Doc. 20-2, p. 8). This fact goes towards Respondent's bargaining position in terms of arranging for her father to stay at the facility. However, because the Arbitration Agreement clearly stated that acceptance was not a condition for admittance, and she had the option to rescind her consent, the fact that Petitioners' facility was the only one available to Respondent is not relevant to Respondent's bargaining power in relation to the Arbitration Agreement itself. Thus, again, we are unable to find procedural unconscionability on these grounds.

Respondent does not offer any argument that economic compulsion motivated her decision to sign the Arbitration Agreement. Accordingly, while the Court does recognize the potential for procedural unconscionability in circumstances similar to those before Respondent, we do not find sufficient duress here to warrant a determination of procedural unconscionability. As we have also failed to find substantive unconscionability, there is no genuine issue of material fact as to the overall unconscionability of the Agreement, and the Agreement shall not be found unenforceable on these grounds.

### B. Impact of Respondent's wrongful death claim

Respondent argues that because the Arbitration Agreement does not apply to Respondent's wrongful death claim, the Court would have to sever it from Respondent's other claims, thereby nullifying the purportedly conferred consideration and frustrating the intended purpose of the Agreement. (Doc. 20, pp. 20-21). This argument contravenes the precedent set down by prior case law encompassing identical factual scenarios. Rather, where claims covered by an agreement to arbitrate are put forth in the same action as a wrongful death claim that is not encompassed by an arbitration agreement, courts have had no issue severing the wrongful death claim to remain in state court pending disposition of the claims covered by arbitration. An example of this can be found in *Sulpizio*, where our colleague Judge Kane noted that "[t]he FAA 'requires piecemeal

15

resolution when necessary to give effect to an arbitration agreement.' Such piecemeal litigation is necessary 'irrespective of any concomitant decline in judicial efficiency.'" *Sulpizio*, 2016 WL 1271333, at *7 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, U.S. 1, 20 (1983)); see also *Golden Gate Nat'l Senior Care, LLC v. Beavens*, 123 F.Supp.3d 619, 636 (E.D.Pa. 2015) ("The fact that Ms. Beavens and her sister cannot be compelled to arbitrate the wrongful death claim cannot stop arbitration of the survival action. The claims must be bifurcated to accomplish the goals of the FAA."). Accordingly, we shall not find in Respondent's favor on these grounds.

### C. Validity of the Agreement

Respondent argues that because the Agreement is undated, it is missing an essential term and is therefore not a valid contract. Respondent cites to no case law supporting her conclusion that a date is an essential term of an agreement to arbitrate, without which an agreement is unenforceable.[8] Further, there is no

---

[8] Respondent's reliance on *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A.3d 94, 96-98 (Pa. Super. 2015), is misplaced. In *Bair*, the court considered a voluntary arbitration agreement form with blanks on the first page for the insertion of the names of the contracting parties and the date, *both* left entirely blank. Further, the agreement provided that "arbitration is described in the voluntary arbitration program brochure, a copy of which is attached and made part of this agreement." *Id*. at 96 (internal citations and quotations omitted). However, the brochure was never attached. Finally, at the signature lines for the contracting parties, only one party had in fact signed the agreement. The court concluded that the agreement did not signify that "the parties agreed in a clear and unmistakable manner to arbitrate their disputes." *Id*. at 97.

We find the agreement at issue in *Bair* to be egregiously incomplete, particularly when compared to the Arbitration Agreement at issue in the matter *sub judice*. The Agreement here lacks only a date and indeed never provided a space for one. The difference between the two documents is too stark to compare them effectively. Certainly, *Bair* cannot be presumed to stand

16

genuine dispute of material fact regarding the date the Arbitration Agreement was signed. In her deposition testimony, Respondent indicated she has no reason to doubt that she signed the signature page of the Agreement on the same date that she signed the other admissions documents—August 13, 2014. (Doc. 20-2, p. 12). Accordingly, we do not find that the absence of a date, particularly where the Agreement does not actually require one, sufficient to invalidate the Agreement or show an absence of intent to agree.

### III. CONCLUSION

Petitioners' Motion for Summary Judgment (doc. 18) shall be granted in full for all the reasons stated above. A separate order shall issue in accordance with this ruling.

---

for the premise that the absence of a date indicates the absence of mutual consent to be bound. Accordingly, we decline to read it in such a way.